Daniel WHITE, Appellant,

v.

Erias A. HYMAN, District of Columbia Board of Parole, Appellee.

No. 93–SP–141.

District of Columbia Court of Appeals.

Submitted June 2, 1994.
Decided Sept. 29, 1994.

whole, the *Petite* decision lends no support to the government's position here.

John T. Moran, Washington, DC, filed a brief for appellant.

John Payton, Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, and Michael A. Conley, Sp. Asst. Corp. Counsel, Washington, DC, filed a brief for appellee.

Before WAGNER, Chief Judge,* and TERRY and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

Daniel White, a prisoner at a facility administered by the District of Columbia Department of Corrections, filed a petition in the Superior Court for a writ of habeas corpus, alleging that the District of Columbia Board of Parole had unlawfully denied him timely consideration for parole. A Superior Court judge denied the petition without a hearing and dismissed the writ. Because the Board's "Policy Guideline," which White invokes, was adopted after the decision in his case; because White's contention that the Guideline should be applied retroactively was not made to the trial court or brought to the attention of the agency; and because the District's parole statutes and regulations, on which White also relies, do not create a protected liberty interest in being reconsid-

---

* *Judge* Wagner was an *Associate Judge* of this court at the time this case was submitted. Her status changed to *Chief Judge* on June 14, 1994.

ered for parole at any specific time, we affirm.

## I.

White is a prisoner at the Lorton facility operated by the District of Columbia Department of Corrections. He is currently serving sentences with aggregate maximum terms totalling more than sixteen years for offenses which include unlawful distribution of dilaudid, unlawful possession of dilaudid with intent to distribute it, several crimes against property, and willful failure to appear in court. On January 19, 1990, apparently while on pre-parole work release, White failed to return to a halfway house and was placed on escape status. He remained an escapee for seventeen days until he was apprehended on February 4, 1990. After his return to custody, White received a major disciplinary report for possession of contraband.

The Board of Parole held a hearing on October 18, 1991, to determine whether White should be paroled. Board member Enrico Rivera, who prepared the documentation for the Board, noted White's escape and disciplinary violation, and concluded as follows:

> It appears that subject's institutionalized behavior has been deplorable, and it is difficult to understand DCDC's [1] logic in placing this subject at a halfway house with his type of record. A denial is strongly recommended, and a significant set-off [2] proposed, as a deterrent to the subject's apparent contempt of the criminal justice process.

On October 19, 1991, the day after the hearing, White escaped again. He was not returned to custody until 133 days later. Meanwhile, on November 4, 1991, in conformity with Mr. Rivera's recommendation, the Board denied White parole and set a new parole hearing date for February 4, 1996.

On December 17, 1992, White filed a *pro se* petition for a writ of habeas corpus in the Superior Court, alleging that the Board had violated its Regulations and Guideline by setting a reconsideration date more than four years in the future, and by failing to state its grounds for denying parole and for setting the reconsideration date it did. The trial judge denied the petition on December 22, 1992, noting that "in view of petitioner's escape status for 133 days [3] ... the Board of Parole proceeded lawfully in issuing its 'early initial' hearing order of November 4, 1991." This appeal followed.

## II.

White contends that the District's parole scheme provides him with a protected liberty interest, *see Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7–8, 99 S.Ct. 2100, 2103–04, 60 L.Ed.2d 668 (1979); *Board of Pardons v. Allen*, 482 U.S. 369, 376–81, 107 S.Ct. 2415, 2419–22, 96 L.Ed.2d 303 (1987), and that the Board failed to adhere to its obligations under its regulations and Guideline and thus denied him liberty without due process of law. In order to assess White's contentions, we must consider the language of the provisions on which he relies.

Section VI(A)(1) of the Board's "Policy Guideline," which was initially adopted on December 16, 1991, and amended in April 1992, provides in pertinent part as follows:

> When the Board denies parole for any offender, it shall *ordinarily* schedule a reconsideration date within the prescribed set-offs unless certain factors support imposition of an alternative set-off. The length of a set-off is based on the term of the sentence imposed by the courts, and may not exceed the date on which release from incarceration becomes mandatory.

1. District of Columbia Department of Corrections.

2. Section V(B) of the Policy Guideline defines "set-off" as "a period of time ordered by the Board that an offender must remain incarcerated

before being reconsidered for parole by the Board."

3. The judge's reference to 133 days was inaccurate. The judge apparently confused White's lengthy escape *after* the Board's decision with his

(Emphasis added).[4] The applicable regulation respecting the scheduling of rehearings provides that

> [w]hen the Board denies parole and orders reconsideration for a person serving a maximum sentence of five (5) years or more, reconsideration shall *ordinarily* occur within twelve (12) months.

> 28 DCMR § 104.2 (1988) (emphasis added). It is undisputed that White is serving a maximum sentence of more than five years.

Section VI(A)(2) of the Guideline states that the Board, in its discretion, may schedule a reconsideration date later than the prescribed set-off if certain aggravating factors are present. The enumerated aggravating factors include the following:

> g. There has been repeated or extremely serious negative institutional behavior.[5]

Section I of the Guideline identifies as its authority D.C.Code § 24–201(2) (1989) and 28 DCMR § 104 (1987). Although, as we have noted, 28 DCMR § 104.2 provides that, where a prisoner is serving a maximum term of more than five years, the reconsideration date shall "ordinarily" occur within a year, the Regulation makes it clear that such a date is not mandatory, for

> [n]otwithstanding any other provision of this section, the Board may order a parole

reconsideration date it determines to be appropriate.

28 DCMR § 104.11.

## III.

■ In his challenge in this court to the Board's action, White first invokes a Guideline which was initially adopted by the Board on December 16, 1991, and amended four months later. The Board's decision was issued on November 4, 1991, six weeks before the Guideline became effective. The Corporation Counsel contends that the Guideline "could not have been intended to apply to White's case." White counters in his reply brief that he did not become eligible for parole until February 4, 1992, and that the Guideline is "applicable to prisoners whose parole eligibility date succeeded adoption of the Guideline."

In effect, White contends that the Guideline retroactively invalidates decisions made by the Board prior to the Guideline's effective date. This argument is presented for the first time on appeal, and the Board has never considered it. Indeed, the Guideline did not exist at the time of the Board's decision and, so far as the record discloses, White made no attempt, after the Guideline became effective, to ask the Board to reconsider his eligibility. *Cf. Glenbrook Rd. Ass'n v. District of Columbia Bd. of Zoning Adjustment*, 605 A.2d 22, 37 (D.C.1992) (agency did not err when it failed, *sua sponte*, to reopen a case on the basis of an intervening ·

---

earlier 17–day escape in 1990, to which Mr. Rivera had referred in his submission.

4. Because, as we note below, White made no contention based on the Guideline to the agency or in the trial court, the Guideline was not originally in the record. White's appellate counsel *moved to supplement the record*, however, and the April 1992 version of the Guideline is reproduced as an appendix to White's brief. We assume, without deciding, that we can take judicial notice of its contents.

5. The remaining aggravating factors are:
   a. There has been repeated failure under any form of community supervision (probation, parole, bail, diversion programs).
   b. The instant offense involved ongoing criminal behavior or leadership role in an organized, criminal venture (*e.g.,* · an organized drug distribution operation).

c. There is a lengthy history of criminally-related alcohol and/or substance abuse.
d. There is a history of repetitive sophisticated, assaultive, or fraudulent criminal behavior (including the current offense).
e. There is an unusually extensive or serious prior record (at least five felony convictions).
f. The instant offense involved unusual cruelty to victim(s) or involved especially vulnerable victims (*e.g.,* children or elderly victims of assaultive or fraudulent behavior).

\* \* \* \* \* \*

h. There has been opportunity but little/no effort made toward rehabilitation/preparation for remaining crime-free if returned to the community.
i. The offender poses a serious threat to self or others and adequate resources are not available in the community.

enactment, where no party had requested that it do so). Since the issue of retroactivity has not been addressed by the Board, we do not have the benefit of the interpretation of the Guideline by the agency charged with its enforcement. *See id.* at 30 (interpretation by an agency of its own regulation must be accorded "great weight").

■ In his somewhat sophisticated *pro se* petition for a writ of habeas corpus, White likewise failed to present to the trial court his contention that the Guideline on which he now relies was intended to apply to decisions made by the Board prior to its effective date. Indeed, before the trial court, White forcefully argued the exact opposite, contending, *inter alia,* that the Guideline was not intended to apply retroactively and that if the Board applied the Policy Guideline of December 16, 1991, to the instant case, then "it may be in violation of *ex post facto* laws; and in violation of Mr. White's due process rights under the *Fifth* and *Fourteenth* Amendment[s]." "Parties may not assert one theory at trial and another theory on appeal." *Hackes v. Hackes,* 446 A.2d 396, 398 (D.C.1982); *see generally D.D. v. M.T.,* 550 A.2d 37, 48 (D.C. 1988) ("questions not properly raised and preserved during the proceedings under examination ... will normally be spurned on appeal") (citation omitted). Given the deeply rooted presumption against retroactivity, which was recently invoked by the Supreme Court in interpreting a remedial federal civil rights statute, *see Landgraf v. USI Film Products,* —— U.S. ——, —— & n. 17, 114 S.Ct. 1483, 1497 & n. 17, 128 L.Ed.2d 229 (1994), we cannot say that the trial judge committed plain error in failing to set aside a decision of the Board which predated the promulgation of the Guideline, where neither he nor the Board had been asked to apply the Guideline retroactively. *Cf. District of Columbia v. Wical Ltd. Partnership,* 630 A.2d 174, 182 (D.C.1993) (appellate court will entertain contentions not made below only if failure to do so will result in a miscarriage of justice).[6].

6. Even if we were to apply the Guideline, White has not shown that the Board violated it. Escape from a halfway house, followed shortly after apprehension by possession of contraband, could

**IV.**

White next contends that "[a] liberty interest in parole reconsideration is created by statutes and Board regulations in effect prior to the Policy Guideline." Once again, we must disagree.

The District's parole statute provides in pertinent part as follows:

> Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that [the inmate] has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board *may* authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C.Code § 24–204(a) (1989) (emphasis added). The statutory language is phrased in discretionary terms, and leaves it to the Board to determine whether the prisoner is likely to be a responsible citizen if he is returned to the community and whether release on parole is consistent with public safety.

The parole regulations also reflect this discretionary approach. Decisions regarding parole shall be "in [the Board's] discretion." § 200.1. Although a numerical scoring system is created to guide the Board in making the decision whether to grant or deny parole, the purpose of the system is "to enable the Board to exercise its discretion." § 204.1. Where the Board, in the exercise of that discretion, departs from the numerical system, it shall "specify in writing those factors which it used." § 204.22. Departures must be explained, but they are not proscribed.

The decision when to schedule a new parole hearing after an inmate has been denied parole is likewise a discretionary one. Section 104.2, quoted above at page 4, provides that, in a case such as White's, a new hearing

reasonably be viewed as "extremely serious negative institutional behavior," within the meaning of Section VI(A)(2)(g) of the Guideline.

will "ordinarily" be held within twelve months. The non-binding character of this provision is, however, apparent from § 104.-11, which explicitly authorizes the Board to select an appropriate reconsideration date *"notwithstanding any other provision of this section."* (Emphasis added).

■ Because the statute and Regulation vest in the Board substantial discretion in granting or denying parole and in setting a reconsideration date following an initial denial of parole, they lack the mandatory character which the Supreme Court has found essential to a claim that a regime of parole gives rise to a liberty interest. For example, in *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989), the Court held that, in order to create a liberty interest, the regulation at issue must impose substantive limitations on a decisionmaker's discretion, so that, if specified criteria are met, "a particular outcome must follow."

In *Brandon v. District of Columbia Bd. of Parole*, 262 U.S.App.D.C. 236, 823 F.2d 644 (1987) (*Brandon II*), an inmate raised issues similar to those presented here by White. In affirming the denial of relief by the District Court,[7] the United States Court of Appeals, in an opinion by Judge Mikva, emphatically rejected the notion that an alleged departure from the parole regulations in the scheduling of a new parole hearing implicated the Due Process Clause:

> Appellant's claim that he has a constitutionally protected liberty interest in a reparole hearing and thus a due process right to have the Board adhere to its regulations lacks support in law or logic; indeed, it is analytically indefensible.
>
> \*    \*    \*    \*    \*    .\*
>
> In sum, we hold that the procedures adopted by the state to guide its parole release determinations are not themselves liberty interests entitled to constitutional due process protection. Brandon does not

have a constitutionally protected interest in having the Board adhere to its procedural requirements.

*Id.* at 240, 241, 823 F.2d at 648, 649 (citations and internal quotation marks omitted).

The appellate court recognized in *Brandon II* that a prisoner who has no constitutionally protected liberty interest may nevertheless have rights under local law. The court did not reach the question whether Brandon had such rights under District of Columbia law, for Brandon did not appeal on that issue. *Id.* at 241, 823 F.2d at 649. In *Brandon I*, however, the district court rejected that argument as well, relying on the non-mandatory language of the statute and regulations, and holding that the granting of parole to a particular prisoner in the District of Columbia was neither a constitutional nor a statutory requirement, but rather a determination committed to the discretion of the Parole Board. 631 F.Supp. at 439–40. This analysis must apply, *a fortiori*, to the decision regarding the timing of a reparole hearing, for it would be logically inconsistent to hold that granting parole is discretionary, but that the selection of a new parole hearing date implicates a protected liberty interest on which a prisoner can predicate a petition for a writ of habeas corpus.

## V.

■ White also asserts that his liberty interests were violated because the Board did not specify the reasons for setting his reconsideration hearing beyond the one-year period for reconsideration normally applicable. The order of which White complains predated the Guideline, and the provision on which he relies [8] requiring written explanations as to set-offs did not exist at the time the Board acted in his case.

Even if we were to assume that the Guideline applied retroactively and required the Board to reopen White's case and to provide a written statement, noncompliance with this

---

7. *Brandon v. District of Columbia Bd. of Parole*, 631 F.Supp. 435 (D.D.C.1986) (*Brandon I*).

8. Section VII A. 1. of the Guideline reads as follows:

Where the Board denies parole and establishes a date for reconsideration that is outside of the prescribed set-offs, each aggravating or mitigating factor applicable to the decision shall be specified in writing.

requirement would not entitle him to release from custody. In *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), the Supreme Court held that a regulation requiring the government to follow certain *procedures* does not itself give rise to a protected liberty interest, reasoning that:

[p]rocess is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement.

*Id.* at 250, 103 S.Ct. at 1748. In so ruling the Court rejected the very kind of argument which White attempts to advance here, and declined to find that a regulation under which the state had bound itself to provide a hearing before transferring an inmate created a protected liberty interest. Instead, the Court determined that "a State creates a protected liberty interest [only] by placing substantive limitations on official discretion." *Id.* at 249, 103 S.Ct. at 1747; *see also Brandon II, supra,* 262 U.S.App.D.C. at 240, 823 F.2d at 648 (applying language and rationale of *Wakinekona* to the District's parole regime).

*Wakinekona* necessarily disposes of White's argument. Because the Guideline contains no substantive limitations which give rise to a protected liberty interest, the procedural requirement of a statement of reasons gives rise to no claim cognizable in habeas corpus.

█ In any event, White was adequately apprised of the grounds of the decision at issue. The challenged order states that the Board was denying parole and setting reconsideration in February 1996 because White committed a crime while in the halfway house setting, escaped from custody while housed at that facility, and committed a "major" disciplinary violation while in minimum security. Based on this conduct, the hearing officer described White's institutional behavior as "deplorable" and as an indication of his "contempt for the criminal justice process." We conclude that this explanation was sufficient.

9. *Verrett v. Stempson,* 623 A.2d 120 (D.C.1993), on which White seeks to rely, was vacated by this court as moot on October 4, 1993, *Verrett v.*

## VI.

█ For the foregoing reasons, we conclude that the Board did not deprive White of any liberty interest protected by the Constitution or by District of Columbia law. Accordingly, the order of the trial court denying White's petition for a writ of habeas corpus is hereby

*Affirmed.*[9]

*Stempson,* 643 A.2d 902 (D.C.1993) (per curiam). The original decision is without precedential significance.