James DAVIS, Appellant,

v.

John S. HENDERSON, et al., Appellees.

No. 93–SP–954.

District of Columbia Court of Appeals.

Argued Nov. 29, 1994.

Decided Jan. 12, 1995.

George E. Rickman, for appellant.

Mary L. Wilson, Asst. Corp. Counsel, with whom Vanessa Ruiz, Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, were on brief, for appellee.

Before FERREN and KING, Associate Judges, and PRYOR, Senior Judge.

KING, Associate Judge:

James Davis appeals the Superior Court's denial of his petition for a writ of habeas corpus, alleging that the District of Columbia Parole Board ("Board") violated the ex post facto clause of the Constitution by applying a numerical scoring system ("salient factor score"), adopted after he was sentenced, to determine his parole eligibility. Because salient factor scores merely formalize the method by which the Board can exercise its discretion to grant parole, the guidelines do not offend the ex post facto clause. Therefore, we affirm.[1]

Davis has been serving an aggregate sentence of eleven to thirty-three years for armed rape and attempted robbery imposed by the Superior Court in 1980. The Board denied Davis's initial parole request in June 1990 because his "negative institutional behavior placed him outside of the guidelines for parole at that time." Before his parole reconsideration hearing scheduled for March 21, 1991, Davis escaped from a halfway house and remained at large for 235 days. Upon his return to custody he was admitted to the mental health unit at Lorton where he was maintained on medication because he "appeared very paranoid." Davis was again denied parole on June 2, 1992, due to his escape, and because, as the hearing officer noted, for Davis "the real and perceived are

---

1. In three recent cases we have rejected the contention, raised in Davis's other claim, that the Parole Board violated his right to due process by postponing the date for his parole reconsideration hearing. *See Brown–Bey v. Hyman,* 649 A.2d 8, 10 (D.C.1994) (parole regulations do not create a protected liberty interest in a specific parole rehearing date) (citing *White v. Hyman,* 647 A.2d 1175 (D.C.1994)); *Jones v. Braxton,* 647 A.2d 1116, 1177 (D.C.1994). We reject Davis's claim as well.

blurred." The Board scheduled Davis for parole reconsideration by June 2, 1993.[2]

When Davis was convicted in 1980, the Board had no formalized scoring system, but was required by regulation to consider factors such as the inmate's offense, prior history of criminality, personal and social history, physical and emotional health, institutional experience, and availability of community resources, when exercising its discretion to authorize parole. See 9 DCRR § 105.1(a)-(f) (1981). The decision to grant parole remained within the discretion of the Board, provided "there [was] a reasonable probability that a prisoner w[ould] live and remain at liberty without violating the law, [and] that his release [was] not incompatible with the welfare of society," 9 DCRR § 105, a provision that mirrored the parole statute then in effect. See infra note 3.

In 1987 the Board created the salient factor scores "to guide the Board in making the decision whether to grant or deny parole." White v. Hyman, 647 A.2d 1175, 1179 (D.C. 1994) (discussing present parole guidelines). The scoring system "consist[s] of pre and post-incarceration factors," similar to those required to be considered under the previous system, such as the nature of the offense, prior convictions, drug abuse history, institutional adjustment, and disciplinary infractions. 28 DCMR §§ 204.1, 204.4–204.18 (1987). "[T]he purpose of the [new scoring] system is 'to enable the Board to exercise its discretion,'" White, 647 A.2d at 1179 (citing 28 DCMR § 204.1), when a prisoner's "release is not incompatible with the safety of the community." 28 DCMR § 204.1. The discretion conferred by the 1980 guidelines thus survived in the 1987 revisions. See White, 647 A.2d at 1179 ("[w]here the Board,

in the exercise of that discretion, departs from the numerical system, it shall 'specify in writing those factors which it used.' § 204.22. Departures must be explained, but they are not proscribed.").

Despite the fact that the parole guidelines reflect a discretionary approach to granting parole,[3] in his brief Davis contends that the application of the salient factor scores to his parole determination subjected him to an ex post facto violation because the scores "ostensibly removed any prospect for his early release [on parole] through the board acting with unfettered discretion [which it had under the old guidelines]." In support of this claim, Davis relies on Supreme Court cases holding that changes in other statutory guidelines are ex post facto violations. See Weaver v. Graham, 450 U.S. 24, 36, 101 S.Ct. 960, 968, 67 L.Ed.2d 17 (1981) (statutory change in formulation of good time credits is a violation of the ex post facto clause where change "constricts the inmate's opportunity to earn early release" and accrual of good time credits is actually altered); Lindsey v. Washington, 301 U.S. 397, 402, 57 S.Ct. 797, 799, 81 L.Ed. 1182 (1937) (change in sentencing guidelines after offender's commission of crime is ex post facto violation where change "deprived [offender] of all opportunity to receive a sentence" as short as under the old guidelines). These cases can be distinguished, because in Weaver, the formula for calculating monthly good time credits was altered to reduce the accumulation of the credits, which actually increased Weaver's prison time by two years, Weaver, 450 U.S. at 26–27, 33–36, 101 S.Ct. at 962–63, 966–68, and in Lindsey, the change in sentencing guidelines removed all opportunity to receive

---

**2.** The Board again denied Davis parole and scheduled him for reconsideration by October 15, 1994. In August 1994, the Board reconsidered Davis's parole request and granted him "parole through work release to supervision on or after February 5, 1995."

**3.** The District's parole statute, which has been in force since July 15, 1932, provides in pertinent part:

Whenever it shall appear to the Board of Parole that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and

that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board *may* authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

D.C.Code § 24–204(a) (1989) (emphasis added). The parole guidelines incorporate this discretionary approach:

In accordance with D.C.Code § 24–204 the Board shall be authorized to release a prisoner on parole *in its discretion* after he or she has served the minimum term....

28 DCMR § 200.1 (1987) (emphasis added).

a lesser sentence. *Lindsey,* 301 U.S. at 401–402, 57 S.Ct. at 799. The new District of Columbia parole guidelines, however, merely formalize the manner in which the Board exercises the discretion conferred upon it by the governing provision in effect when Davis was sentenced. *See* D.C.Code § 24–204, *supra* note 3.

We find support in cases interpreting the effect of similar changes in the federal parole guidelines, which have also been challenged on ex post facto grounds. Before 1976, "the United States Board of Parole ... exercis[ed] its discretion without reference to any explicit standards other than its statutory mandate." *Warren v. United States Parole Comm'n,* 212 U.S.App.D.C. 137, 139, 659 F.2d 183, 185 (1981), *cert. denied,* 455 U.S. 950, 102 S.Ct. 1454, 71 L.Ed.2d 665 (1982).[4] The statutory mandate for determining parole for federal prisoners at the time Warren was convicted provided for a much broader exercise of discretion than the District's parole guidelines in place at the time Davis was convicted. *See supra* note 4. The District's former guidelines based parole determination upon consideration of six categories of factors, and generally did not provide for a grant of parole where the prisoner did not substantially observe institutional rules. *See* 28 DCMR §§ 105.1(a)-(f), 105.2 (1987).

In 1976 the Federal Parole Commission promulgated a set of parole guidelines which were designed, in part, to "structur[e] ... the exercise of discretion by parole officials." *Warren,* 212 U.S.App.D.C. at 145, 659 F.2d at 191. These new guidelines include assignments of salient factor scores based on consideration of factors such as prior criminal history, nature of offense, and drug use history. 28 C.F.R. § 2.20 (1994); *see generally,* *Warren,* 212 U.S.App.D.C. at 143–47, 659 F.2d at 189–193 (discussing change in federal parole guidelines). These new federal parole guidelines are nearly identical to the system later adopted by the District, which are the subject of Davis's challenge. *Compare* 28 C.F.R. § 2.20 *with* 28 DCMR §§ 204.1–204.22.

In addressing a claim that the change in the federal parole guidelines, promulgated after an offender's conviction, subjected him to an ex post facto violation, the Court of Appeals for the District of Columbia Circuit observed:

> [P]recisely because [the offender] was sentenced to be held at the discretion of the parole authorities, under the ex post facto clause he *is* entitled to an opportunity to have that discretion exercised; anything less would impermissibly augment his penalty. But an entitlement to have discretion exercised does not imply an entitlement to have it exercised in a particular way; the essence of discretion is the absence of fixed rules.

*Warren,* 212 U.S.App.D.C. at 150, 659 F.2d at 196 (footnote omitted) (emphasis in original). In analyzing the discretion retained by the U.S. Parole Board in the salient factor scoring system, and the scope of the change from the general statutory mandate to formalized factor consideration, the *Warren* Court held, "[w]hat clinches the case is that Warren was sentenced to be held in federal prison at the discretion—howsoever exercised—of the parole authorities, so that guidelines which merely rationalize the exercise of that discretion do not offend the ex post facto clause." *Warren,* 212 U.S.App.D.C. at 149, 659 F.2d at 195.[5] *A fortiori,* if

---

4. 18 U.S.C. § 4203(a) (1970) (repealed by 18 U.S.C. §§ 4201–4218 (1976)) stated in pertinent part:

> If it appears to the Board of Parole from a report by the proper institutional officers or upon application of a prisoner eligible for release on parole, that there is a reasonable probability that such prisoner will live and remain at liberty without violating the laws, and if in the opinion of the Board such release is not incompatible with the welfare of society, the Board may in its discretion authorize the release of such prisoners on parole.

*Warren,* 212 U.S.App.D.C. at 139 n. 2, 659 F.2d at 185 n. 2.

5. Of the Circuits that have considered the issue, nine have held that the retrospective application of the federal parole salient factor scoring system does not violate the ex post facto clause, although the Courts' reasons for so holding differ, *see infra* note 8 (discussing the Circuit Courts' varied reasoning). *DiNapoli v. Northeast Reg. Parole Comm'n,* 764 F.2d 143 (2d Cir.), *cert. denied,* 474 U.S. 1020, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985); *Sheary v. United States Parole Comm'n,* 822 F.2d 556 (5th Cir.1987); *Ruip v.*

the change in the scope of the United States Parole Board's discretion from general statutory mandate to formalized salient factor scoring system does not violate the ex post facto clause, the change in the exercise of the District of Columbia Parole Board's discretion from informal factor consideration to virtually the same formalized salient factor scoring system does not violate the clause either.

While the Supreme Court has not expressly ruled on this issue,[6] it has discussed at some length the *Warren* case and some of the other federal authorities cited above, *supra* note 5, in a case where it contrasted the retrospective application of the federal parole guidelines to the retrospective application of the federal sentencing guidelines. *See Miller v. Florida*, 482 U.S. 423, 434–35, 107 S.Ct. 2446, 2453, 96 L.Ed.2d 351 (1987). In holding that the retrospective application of the sentencing guidelines violated the ex post facto clause, the Court uncritically distinguished cases which have "articulated several reasons why the ex post facto prohibition does not apply" to the federal parole guidelines, and specifically held that the parole cases were "inapposite" to the ex post facto challenge of the sentencing guidelines.[7] *Id.* In making this determination, the Court noted that the revised sentencing guidelines "create a high hurdle that must be cleared before discretion can be exercised," whereas the revised parole guidelines are more akin

*United States*, 555 F.2d 1331 (6th Cir.1977); *Inglese v. United States Parole Comm'n*, 768 F.2d 932 (7th Cir.1985); *Yamamoto v. United States Parole Comm'n*, 794 F.2d 1295 (8th Cir.1986); *Wallace v. Christensen*, 802 F.2d 1539 (9th Cir. 1986); *Resnick v. United States Parole Comm'n*, 835 F.2d 1297 (10th Cir.1987); *Dufresne v. Baer*, 744 F.2d 1543 (11th Cir.1984), *cert. denied*, 474 U.S. 817, 106 S.Ct. 61, 88 L.Ed.2d 49 (1985).

No federal court of appeals has held to the contrary; and Davis's reliance on *United States Ex Rel. Forman v. McCall*, 709 F.2d 852 (3rd Cir.1983) and *Rodriguez v. United States Parole Comm'n*, 594 F.2d 170 (7th Cir.1979) is misplaced. Although in *Forman* the Court initially held that the federal parole guidelines might be deemed "laws" for the purpose of ex post facto analysis if those guidelines are applied "without substantial flexibility," *Forman*, 709 F.2d at 862, on consideration after remand, the Court held that "the guidelines are being administered with sufficient flexibility and ... they do not constitute 'laws' for the purposes of the ex post facto clause." *United States Ex Rel. Forman v. McCall*, 776 F.2d 1156, 1163 (3rd Cir.1985), *cert. denied*, 476 U.S. 1119, 106 S.Ct. 1981, 90 L.Ed.2d 663 (1986). *Rodriguez* does not concern the retrospective application of salient factor scores, and thus provides no support for Davis's contention. *Rodriguez*, 594 F.2d at 170–71.

6. In *Portley v. Grossman*, 444 U.S. 1311, 100 S.Ct. 714, 62 L.Ed.2d 723 (1980), an opinion in chambers, Justice Rehnquist denied applicant's request for a stay of execution of the Ninth Circuit's denial of a writ of habeas corpus, holding that the change in federal parole guidelines which altered applicant's next presumptive parole date did not violate the ex post facto clause because "[t]he change in guidelines assisting the Commission in the exercise of its discretion is in the nature of a procedural change found permissible in *Dobbert* [*v. Florida*, 432 U.S. 282, 293[, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344] (1977)]." *Portley*, 444 U.S. at 1313, 100 S.Ct. at 715.

In *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 390 n. 1, 100 S.Ct. 1202, 1205 n. 1, 63 L.Ed.2d 479 (1980), the Supreme Court's grant of certiorari included consideration of whether the parole guidelines may violate the ex post facto clause. The Court concluded, however, that it would be premature to reach the merits of this issue because the Court of Appeals for the Third Circuit "did not reach a final conclusion on the validity of the guidelines." *Id.* at 408, 100 S.Ct. at 1214. *See Geraghty v. United States Parole Comm'n*, 579 F.2d 238, 268 (3rd Cir.1978).

7. In distinguishing the ex post facto challenge of the federal sentencing guidelines from the same challenge of the federal parole guidelines, the *Miller* Court observed:

We find the federal parole guidelines cases inapposite. The courts that have upheld the retrospective application of federal parole guidelines have articulated several reasons why the *ex post facto* prohibition does not apply. The majority of these courts have held that the federal parole guidelines are not "laws" for the purposes of the *Ex Post Facto* Clause. *See, e.g., Wallace v. Christensen, supra,* [802 F.2d] at 1553–1554 (citing cases). Other courts have found that the guidelines merely rationalize the exercise of statutory discretion, and that retrospective application of the guidelines thus does not violate the *Ex Post Facto* Clause. *See, e.g., Warren v. United States Parole Comm'n, supra,* at 149, 659 F.2d, at 195; *Portley v. Grossman, supra,* at 1312, 100 S.Ct. at 714. Finally, some of the cases have held that retrospective application of the guidelines does not result in a more onerous punishment and thus does not constitute and *ex post facto* violation. *See, e.g., Dufresne v. Baer, supra,* [744 F.2d] at 1549–1550.

*Miller*, 482 U.S. at 434–35, 107 S.Ct. at 2453 (footnote omitted).

to "flexible 'guideposts' for use in the exercise of discretion." *Id.*

Because the exercise of discretion to which Davis is entitled is available under the new guidelines, as it was previously, we hold that the change in the manner in which that discretion is exercised by the Board does not run afoul of the ex post facto clause. Accordingly, the Superior Court's order denying Davis's writ of habeas corpus is hereby

*Affirmed.*